IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CRIMINAL ACTION NO. 5:09-CR-00049-KDB-DCK-1

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DAVID MARK LOWMAN,<br><br>Defendant. | <u>**ORDER**</u> |

**THIS MATTER** is before the Court on Defendant's "Emergency Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c) (Compassionate Release)." (Doc. No. 387). The Government opposes the motion. For the reasons explained below, the Court will deny Defendant's motion.

## I. BACKGROUND

On February 17, 2010, Defendant pled guilty to conspiring to distribute cocaine and cocaine base and carrying a firearm in relation to a drug trafficking crime. (Doc. Nos. 110, 116). The Presentence Investigation Report ("PSR") describes the specifics of Defendant's charge and conviction as follows. (Doc. No. 217, at ¶¶ 1-70).

Law enforcement was investigating a United States/Mexico money laundering drug trafficking organization that was involved in smuggling large amounts of cocaine and marijuana from the Rio Grande Valley of South Texas and cities located in the eastern portion of the United States, including Hickory, North Carolina. *Id.* at ¶ 11. The principal target of the investigation was Alejandro Salinas Garcia. *Id.* Jason Scott Cook was identified as one of Garcia's primary cocaine and marijuana distributors operating in the Catawba County area of North Carolina. *Id.* After

1

investigators executed a federal search warrant at Cook's residence in September 2009, Cook agreed to cooperate with investigators and provide information regarding his drug trafficking activities as well as his involvement with various co-conspirators. *Id.* at 12. His cooperation led investigators to the twelve defendants in this case. *Id.*

The investigation established that Defendant and Jason Cook were involved in the distribution of cocaine and/or marijuana since at least early 2000. *Id.* at ¶ 13. Defendant was identified as a leader of the drug conspiracy. Individuals distributed drugs, transported proceeds, and bonded out co-conspirators when they were arrested, all at Defendant's direction. *Id.* The PSR reflects a number of undercover operations during which a confidential informant purchased drugs or a firearm from Defendant or another individual at Defendant's home. *Id.* at ¶¶ 16-20, 23-24. It also names a number of witnesses, co-conspirators, and other individuals who gave information regarding Defendant's involvement in the drug conspiracy. These individuals stated that Defendant was known to possess and carry firearms during the course of the conspiracy. *Id.* at ¶ 70.

Defendant was arrested on November 24, 2009. During the arrest, investigators conducted a consent search of the residence and seized approximately 20 firearms. *Id.* at ¶ 58. Defendant pled guilty to one count of conspiring to distribute cocaine and cocaine base and one count of carrying a firearm in relation to a drug trafficking crime. (Doc. No. 110). In his plea agreement, he agreed that he was responsible for at least 150 kilograms of cocaine. *Id.* at ¶ 7a.

The PSR also outlines Defendant's criminal history. On April 19, 1997, at age 18, Defendant was arrested for communicating threats. (Doc. No. 217, at ¶ 90). In 1999, Defendant was arrested at least six times, leading to convictions for simple assault, communicating threats, injury to real property, assault with a deadly weapon, assault on a female, breaking and entering, larceny after

2

Case 5:09-cr-00049-KDB-DCK    Document 397    Filed 06/25/20    Page 2 of 13

breaking and entering, possession of stolen goods, resisting a public officer, and reckless driving to endanger. *Id.* at ¶¶ 91-96. In 2000, Defendant was convicted of two counts of resisting a public officer and one count of larceny from a person. *Id.* at ¶¶ 97-98. In 2001, Defendant was arrested twice and convicted for larceny and carrying a concealed gun. *Id.* at ¶¶ 99-100. In 2003, Defendant was convicted of disorderly conduct and, in 2004, he was charged with possession with intent to sell or deliver cocaine and maintaining a vehicle, dwelling, or place for a controlled substance. *Id.* at ¶¶ 101-102. In 2008, he was convicted on another firearm charge and an illegal gambling charge. *Id.* at ¶¶ 103-104. Defendant's criminal history also shows a number of probation violations. Defendant had many other arrests that did not result in a conviction, including arrests for communicating threats, breaking or entering, simple assault, larceny, assault on a female, assault with a deadly weapon, assault with a deadly weapon inflicting serious injury, and discharging a firearm. *Id.* ¶¶ 110-127.

Based on Defendant's criminal history and offense conduct, Defendant received a criminal history category of IV and a total offense level of 39. *Id.* at ¶ 150. This resulted in a sentencing guideline range of 360 months to life imprisonment, plus a mandatory consecutive sentence of not less than 10 years. *Id.* Following the Government's motion for a downward departure, the Court sentenced Defendant to a total term of 312 months and five years of supervised release on each count to run concurrently. (Doc. No. 259). In January 2016, the Court reduced Defendant's sentence to 275 months' imprisonment pursuant to U.S.S.C. Amendment 782. (Doc. No. 380).

On June 4, 2020, Defendant filed this "Emergency Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c) (Compassionate Release)" based on the COVID-19 pandemic. (Doc. No. 387). He asks the Court to reduce his sentence to time served and three years of supervised release with a term of home confinement. *Id.* The Government filed a response in opposition on June 10,

3

2020 stating that, unbeknownst to defense counsel, Defendant had tested positive for COVID-19. (Doc. No. 393). Defendant filed a reply on June 15, 2020, (Doc. No. 394), to which the Government filed a surreply the same day, (Doc. No. 395). Defendant filed a second reply addressing the Government's arguments on June 18, 2020. (Doc. No. 396).

## II. LEGAL STANDARD

By statute, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of the exceptions to this general rule is a motion for compassionate release. The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, now provides in pertinent part:

> **(c) Modification of an imposed term of imprisonment.**—The Court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c). A defendant seeking compassionate release has the burden of establishing that such relief is warranted. *See, e.g.*, *United States v. Ebbers*, -- F. Supp. 3d --, No. (S4) 02-CR-

4

1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020); *United States v. Heromin*, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019).

The United States Sentencing Guidelines do not specifically contain a policy statement addressing motions for reductions in terms of imprisonment that are filed by an inmate. However, U.S.S.G. § 1B1.13 ("the Policy Statement") addresses motions for reductions in terms of imprisonment that are filed by the Director of the Bureau of Prisons (BOP). The Policy Statement largely mirrors the language of 18 U.S.C. § 3582(c)(1)(A) but includes a directive that the court determine that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). In determining whether a defendant is a danger to the safety of any other person or to the community, the Court must consider the following statutory factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the [defendant];
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

If the Court finds the defendant is not a danger to the safety of any other person or the community, the Policy Statement directs the Court to consider a variety of circumstances in determining whether extraordinary and compelling reasons justify a sentence reduction. U.S.S.G. § 1B1.13(2) App. Note 1. Specifically, the Court should consider whether any of the following circumstances exist: (1) "[t]he defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)" although a specific prognosis of life expectancy is not required; (2) the defendant is: "suffering from a serious physical or medical condition, suffering from a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; (3) the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less; (4) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children"; (5) "[t]he incapacitation of the defendant's spouse or registered partner"; or (6) "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons" set forth in the prior factors. *Id.*

While courts agree that the Policy Statement and Application Notes set forth above apply to motions filed by the Director of the BOP, courts differ on whether the Policy Statement is binding on motions filed by the inmate. *See, e.g.*, *United States v. Lynn*, No. 89-0071-WS, 2019 WL 3805349 (S.D. Ala. Aug. 13, 2019) (binding); *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019) (not binding). "The Sentencing Commission has not amended or updated the old

6

policy statement since the First Step Act was enacted, nor has it adopted a new policy statement applicable to motions filed by defendants." *Beck*, 425 F. Supp. 3d at 579. Accordingly, the majority of courts do not find the Policy Statement binding. Even so, the courts that find that the Policy Statement does not constrain the Court's independent assessment of whether "extraordinary and compelling reasons" warrant a sentence reduction still look to the old policy statement as it provides helpful guidance.

### III. DISCUSSION

*A. Exhaustion of Administrative Remedies*

A prisoner may bring a motion for compassionate release before the court only if he "has fully exhausted all administrative rights to appeal a failure" of the BOP to bring a motion on his behalf or if 30 days have passed since the warden received his request, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Defendant argues that he has satisfied the exhaustion requirement because he submitted a request for a reduction in sentence to the warden of his facility and was denied. Alternatively, Defendant argues that this Court may excuse the exhaustion requirement on "equitable grounds, and COVID-19 is one such ground." (Doc. No. 387, at 6). Although unclear whether Defendant has fully exhausted his remedies under the compassionate release statute, the Government does not argue that Defendant's motion should be denied for failure to exhaust his administrative remedies.[1]

---

[1] Defendant asserts that he "submitted a request for reduction in sentence to the warden of his facility and was declined, providing the basis for the Court to consider this motion." (Doc. No. 387, at 6). Most courts hold that if the warden denies the defendant's compassionate release motion within 30 days, the defendant must go through the administrative appeals process available under BOP regulations. *See, e.g.*, *United States v. Miller*, No. 2:16-cr-00269-BLW, 2020 WL 113349, at *2 (D. Idaho Jan. 8, 2020) (collecting cases); *United States v. Weidenhamer*, No. CR-16-01072-001-PHX-ROS, 2019 WL 6050264, at *4 (D. Ariz. Nov. 8, 2019) (noting this approach is the "better reading" of the statute). While some courts have held otherwise, this Court agrees that this reading is the better reading of the statute and that, if the warden did deny Defendant's request for

7

Courts are split over whether the exhaustion requirement is jurisdictional or is a "case processing" rule that can be waived. *Compare United States v. Brown*, No. CR 12-20066-37-KHV, 2020 WL 1935053, at *1 (D. Kan. Apr. 22, 2020) ("The requirement to exhaust administrative remedies or wait 30 days after the warden receives a request is jurisdictional.") *with United States v. Alam*, -- F.3d --, No. 20-1298, 2020 WL 2845694, at *2 (6th Cir. June 2, 2020) (holding the administrative exhaustion requirement is non-jurisdictional). The majority view is that the exhaustion requirement is a non-jurisdictional requirement that can be waived. *See, e.g.*, *United States v. Smith*, No. 12 Cr. 133 (JFK), 2020 WL 1849748, at *2-3 (S.D.N.Y. Apr. 13, 2020) (collecting cases).

If the rule is not jurisdictional, then it can be waived, forfeited, or abandoned, and is otherwise subject to exceptions. *See United States v. Zekerman*, 16 Cr. 194 (AT), 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020); *United States v. Russo*, No. 16-cr-441 (LJL), 2020 WL 1862294, at *5 (S.D.N.Y. Apr. 14, 2020). Such an exception may include where the exhaustion requirement would be futile. *See, e.g.*, *Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020); *United States v. Colvin*, No. 3:19cr179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) ("[I]n light of the urgency of Defendant's request, the likelihood that she cannot exhaust her administrative appeals during her remaining eleven days of imprisonment, and the potential for serious health consequences, the [c]ourt waives the exhaustion requirement of Section 3582(c)(1)(A).").

Because the Government did not raise the issue of exhaustion, the Court deems that it has waived the defense. Accordingly, the Court will proceed to address the merits of Defendant's motion.

---

compassionate release within 30 days, Defendant should have exhausted the administrative appeals process available within the BOP before petitioning the Court.

8

*B. Policy Statements*

Despite the lack of a policy statement clearly applicable to motions for compassionate release filed by defendants, the Court is guided by the general precepts of the Policy Statement in U.S.S.G. § 1B1.13. The Court finds it is not restrained by the Policy Statement in U.S.S.G. § 1B1.13 and is free to consider the COVID-19 pandemic, combined with other relevant circumstances, regardless of whether it falls within one of the existing categories in the U.S.S.G. § 1B1.13 commentary. A discussion of the 3553(a) factors below will adequately address concerns outlined in the Policy Statement.

*C. Extraordinary and Compelling Reasons*

In his initial motion for compassionate release, Defendant argued that his vulnerability to COVID-19 is an extraordinary and compelling reason for an immediate reduction in his sentence to time-served. Defendant, a 41-year-old male imprisoned at Butner Low FCI, claims he suffers from the following risk factors: asthma, obesity, and sleep apnea. (Doc. No. 387, at 21-22).[2] The Government filed a response to Defendant's initial motion alerting the Court that, unbeknownst to his attorney at the time, Defendant had tested positive for COVID-19 on June 1, 2020. Defendant filed two subsequent replies to the Government's opposition, arguing that he can test positive and still obtain relief. Defendant also argues that the Butner facilities have specific features that make it more dangerous than other prisons and cites the number of confirmed COVID-19 cases at Butner.

The sole fact that Defendant tested positive for COVID-19 has little impact on this Court's analysis. Many people who test positive for COVID-19 may be asymptomatic or may only have a minor case that is far from life threatening. *See COVID-19 Pandemic Planning Scenarios*, Centers

---

[2] Defendant has a BMI of 29.6, just below the CDC's definition of obesity. (Doc. No. 396, at 3).

9

for Disease Control and Prevention (CDC), https://www.cdc.gov/coronavirus/2019-ncov/hcp/planning-scenarios.html (last visited June 23, 2020). Aside from listing his underlying conditions and stating that COVID-19 *could* be life threatening, Defendant does not claim that his case of COVID-19 is particularly acute.

Further, Defendant and the United States dispute the severity of Defendant's medical conditions. Specifically, Defendant contends that he has moderate to severe asthma, while the United States contends that he only has mild asthma. The Court need not determine the severity of Defendant's asthma because even if extraordinary and compelling reasons exist, the analysis under Section 3553(a) counsels against a reduction in his sentence.

*D. Section 3553(a) Factors*

At Defendant's sentencing, the Court considered each of the Section 3553(a) factors and determined that Defendant's conduct warranted a custodial sentence. In determining whether a reduced sentence is appropriate, the Court must again undertake such an analysis to determine that Defendant's sentence is "sufficient, but not greater than necessary," to achieve the goals of sentencing. 18 U.S.C. § 3553(a). The Section 3553(a) factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed"; (3) "the kinds of sentences available"; (4) the sentencing guidelines; (5) "any pertinent policy statement"; (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and (7) "the need to provide restitution to any victims of the offense." *Id.*

Regarding the nature and circumstances of the offense, Defendant asserts in his motion that his "offense of conviction did not involve violence." However, the PSR shows that Defendant was the leader of a violent drug trafficking organization and, as the United States points out, he is listed

as defendant #1 at a time when the United States Attorney's Office was charging people in order of hierarchy, instead of by alphabetical order. (Doc. No. 33, at 2). His conviction was for a drug trafficking conspiracy that spanned nearly a decade and possession of a firearm in furtherance of that drug trafficking scheme, which was enhanced because his crime "involved one or more short-barreled shotguns and one or more semiautomatic assault weapons." (Doc. No. 217, at ¶ 58). The nature and circumstances of Defendant's offense weigh in favor of serving his full term of imprisonment.

As outlined above, Defendant has a serious violent criminal history that counsels against reducing his sentence. Despite numerous convictions beginning at age 18, Defendant continued to violate the law up until his current conviction in 2010. His history also shows a number of probation revocations, indicating that Defendant's original convictions did not dissuade him from further criminal conduct. In fact, at the time of the current offense, Defendant was on probation for numerous convictions. (Doc. No. 217, at ¶ 107). Defendant's criminal history category resulted in a category IV. The Court is of the firm opinion that a custodial sentence continues to be necessary to deter Defendant from future criminal conduct. With a projected release date of June 3, 2029, Defendant still has a large portion of his sentence remaining to be served.

Further, this history reflects a need to protect the public from further crimes of Defendant. There is often a correlation between drug trafficking and violence, as evidenced by Defendant's criminal history. On at least two occasions witnesses reported to the police that he fired his gun at someone or in their direction. (Doc. No. 217, at ¶¶ 28, 31). Witnesses also reported that Defendant was known for carrying a firearm with him at all times. The PSR outlines that Defendant possessed and sold numerous illegal firearms, at least one of which had been stolen from a person's home. (Doc. No. 217, at ¶ 17).

11

Case 5:09-cr-00049-KDB-DCK   Document 397   Filed 06/25/20   Page 11 of 13

This Court acknowledges the severity of the COVID-19 problem at the BOP facilities at Butner. Other courts have done the same. *See United States v. Bess*, No. 16-cr-156, 2020 WL 1940809, at *8 (W.D.N.Y. Apr. 22, 2020); *United States v. Griggs*, No. 4:18-cr-216-DCC, 2020 WL 2614867, at *9 (D.S.C. May, 22, 2020). There is no doubt the high number of confirmed COVID-19 cases at Butner prompts concern. However, Defendant's need for medical care is just one factor that the Court must consider. Additionally, while Defendant is the only defendant of the 12 defendants in this case still in BOP custody, the Court does not construe this as evidence of an unwarranted sentencing disparity among similarly situated defendants.

The Court in its discretion concludes that Defendant has failed to demonstrate that the Section 3553(a) factors weigh in favor of his request for compassionate release. *See, e.g.*, *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020) (affirming denial of compassionate release based on nature of the offense and defendant's criminal record, even though defendant had a terminal disease constituting an extraordinary and compelling reason and did not present a danger upon release); *United States v. Kincaid*, No. 19-6271, 2020 WL 1951899, at *1 (6th Cir. Apr. 23, 2020) (same); *United States v. Clark*, No. 1:09cr336-1, 2020 WL 1874140, at *3-8 (M.D.N.C. Apr. 15, 2020) (denying motion after finding extraordinary and compelling reasons based on defendant's terminal illness and COVID-19 because of the severity of his underlying crimes); *United States v. Webster*, No. 3:91cr138 (DJN), 2020 WL 618828 (E.D. Va. Feb. 10, 2020) (finding defendant's terminal illness constituted an extraordinary and compelling reason but denying motion because of the seriousness of his crime and the need to promote respect for the law and protect the community).

### IV. ORDER

12

For these reasons, Defendant's Emergency Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c) (Compassionate Release), (Doc. No. 387), is **DENIED**.

**SO ORDERED.**

Signed: June 25, 2020

Kenneth D. Bell
United States District Judge